IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FLORA DENISE WILLIAMS, : CIVIL ACTION
      Plaintiff :
:
vs. :
:
MICHAEL J. ASTRUE[1], :
Commissioner of Social Security, :
      Defendant : NO. 12-3552

## REPORT AND RECOMMENDATION

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

      This action was brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied the application of Flora Denise Williams for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Presently before this court are the plaintiff's request for review and the defendant's response to request for review. For the reasons set forth below, this court recommends that plaintiff's request for review be GRANTED in part and DENIED in part.

I.    FACTUAL AND PROCEDURAL HISTORY

      Plaintiff is a fifty one (51) year old woman born on August 30, 1961. (Tr. 137). Plaintiff is a high school graduate. (Tr. 161). Plaintiff worked in the past as a customer service representative. (Tr. 47).

      On March 17, 2009, plaintiff filed an application for DIB. (Tr. 134). Plaintiff

---

[1]Michael J. Astrue became Commissioner of Social Security on February 14, 2007. Pursuant to Fed. R. Civ. Pr. 25(d)(1), he is automatically substituted for Jo Anne B. Barnhart as defendant in this matter.

1

claimed disability since August 16, 2008. (Tr. 134). This application was denied at the state level. (Tr. 61). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (

A hearing before ALJ Jennifer M. Lash took place on May 19, 2010. (Tr. 24-52). Plaintiff, represented by counsel, testified, along with a vocational expert. (Tr. 24-52). The ALJ found that plaintiff's severe impairments were: obesity disorder; status post distal tarsal tunnel release disorder; plantar fascial release disorder; right ankle sprain disorder; affective disorder; and anxiety disorder. (Tr. 12). The ALJ further determined that plaintiff has the residual functional capacity to perform less than the full range of light level exertional work. More specifically, plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; can stand and/or walk four hours in an eight-hour day; can sit six hours in an eight-hour day; can do no more than occasional pushing or pulling with the right lower extremity; can occasionally climb ramps, stairs and ladders, but never climb ropes or scaffolds; can occasionally kneel, crouch and crawl; can frequently balance and stoop; has a need to alternate standing and sitting positions at will; and is limited to unskilled work with routine and repetitive tasks with only occasional judgment required on the job, no interaction with the public, and only occasional interaction with co-workers. (Tr. 14). The ALJ determined that plaintiff is unable to perform any past relevant work. (Tr. 18). However, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 19).

Plaintiff requested review before the Appeals Council. The Appeals Council upheld the ALJ's decision on April 7, 2012, permitting the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-4). Plaintiff subsequently appealed that denial to this court.

II.       LEGAL STANDARDS

The role of this court, on judicial review, is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552 (1988). "Substantial evidence" is not "a large or significant amount of evidence but rather such relevant evidence as a reasonable mind might accept to support a conclusion." Id. at 664-65. Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, 402 U.S. 401 (1971); Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984). "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health and Human Services, 841 F.2d 57 (3d Cir. 1988), quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423(d)(1) (1982). The claimant satisfies his burden by showing an inability to return to his past relevant work. Doak v. Heckler, 790 F.2d at 28; Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979) (citing Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966)). Once this showing is made, the burden of proof shifts to the Commissioner to show that the claimant, given his age, education, and work experience, has the ability to perform specific jobs that exist in the economy. 20 C.F.R. § 404.1520. See Rossi v. Califano, 602 F.2d at 57.

As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 .F.R. § 404.1520 (references to other regulations omitted).

II. ADMINISTRATIVE LAW JUDGE'S DECISION

Using the above mentioned sequential evaluation process, the ALJ determined plaintiff has not been under a "disability," as defined in the Social Security Act, since August 16, 2008, the date the plaintiff's alleged onset of disability, through the date of the ALJ's decision. (Tr. 20).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful work activity since plaintiff's application date. (Tr. 12). At step two, the ALJ found that plaintiff's obesity disorder, status post distal tarsal tunnel release disorder, plantar fascial release disorder, right ankle sprain disorder, affective disorder, and anxiety disorder were "severe" impairments within the meaning of the Regulation. (Tr. 12). In making this determination the ALJ relied upon plaintiff's following summarized medical records:

Treatment records from Rothman Institute indicate that plaintiff was being treated by Nicholas Taweel, D.P.M., D.P.T., a foot and ankle specialist. (Tr. 204-217). On February 29, 2008, plaintiff was seen for right plantar heel pain, after wearing a CAM boot for four weeks. The treatment note indicates that plaintiff had an MRI, which showed a partial tear of the plantar fascia and it was recommended that plaintiff wear a walking fiberglass cast for four weeks. (Tr. 213). Plaintiff was seen for a follow up visit, on March 28, 2008. The walking fiberglass cast was removed and plaintiff was told to wear a CAM boot for an additional four weeks. The assessment was healing partial tear right plantar fascia. (Tr. 205).

On April 4, 2008, plaintiff was seen for a follow up visit and it was noted that plaintiff's pain had increased and was very significant. Dr. Tawell recommended that plaintiff be evaluated by a surgeon for consideration of a plantar fascial and nerve release. (Tr. 204).

On April 8, 2008, plaintiff underwent a right distal tarsal tunnel release and first branch lateral plantar nerve decompression, and a left partial plantar facial release, performed by Steven M. Raikin, M.D. (Tr. 200-204). The postoperative diagnoses were right recalcitrant plantar fasciitis, and right lateral planar nerve impingement syndrome. (Tr. 200).

Physical therapy records from NovaCare Rehabilitation indicate that plaintiff attended physical therapy on June 5, 2008. It was recommended that plaintiff attend therapy three times per week for four weeks. (Tr. 233-235). Plaintiff next attended therapy on July 21, 24, and 29, 2008 and August 5, 2008. Treatment records indicate that plaintiff tolerated the treatment without complaints of pain or difficulty. (Tr. 224-235). The next physical therapy record is from August 22, 2008, and indicates that plaintiff was discharged from therapy for noncompliance. At discharge, plaintiff's prognosis was fair. (Tr. 219-220)

Plaintiff was again seen by Dr. Tawell on December 30, 2008, after plaintiff fell

5

and experienced pain in her right ankle. The assessment was right medial ankle sprain. Plaintiff was placed in a CAM boot. (Tr. 217).

On January 20, 2009, plaintiff was seen for continued care of her right ankle sprain. Plaintiff reported no improvement after wearing the CAM boot for three weeks. Plaintiff's neurovascular status was intact throughout the lower extremity and there were no clinical signs of a sympathetically mediated pain syndrome. Plaintiff had a limp on the right side when ambulating barefoot. It was recommended that plaintiff have an MRI to rule out fracture of the right ankle. (Tr. 214).

A progress note from February 3, 2009, reports that plaintiff's MRI showed no signs of fracture or internal derangement throughout the right ankle. There was some increased intertendinous fluid noted to the Achilles tendon consistent with mild tendonosis. Dr. Taweel noted that the impression was that plaintiff's pain and other unpleasant sensations were from tightness of plaintiff's ligaments and no acute pathology. Physical therapy was recommended. (Tr. 215).

Plaintiff was seen on March 3, 2009 and reported that she had continued pain and felt worse after physical therapy. Plaintiff's neurovascular status was intact throughout the right lower extremity and there were no clinical signs of a sympathetically mediated pain syndrome. Plaintiff's strength and range of motion were within functional limits, but she did display a decreased right stance time when asked to ambulate barefoot. Dr. Taweel indicated that he was unsure why plaintiff was having continued pain, despite the lack of clinical signs of acute inflammation. Dr. Taweel recommended plaintiff be fitted for an Arizona brace for her ankle. (Tr. 206).

Treatment records from NovaCare Rehabilitation show that plaintiff attended six

6

physical therapy sessions between February 16, 2009 and April 16, 2009. (Tr. 236- 254). Plaintiff tolerated therapy with mild complaints of pain. (Tr. 235-254). On April 16, 2009, plaintiff was discharged with a prognosis of fair. The reason for discharge was insurance visit limitations and plaintiff was given a home exercise routine. (Tr. 237).

Donald Parks, M.D., plaintiff's treating physician, completed a disability questionnaire on April 8, 2009. (Tr. 255-257). Dr. Parks wrote that plaintiff suffers from an inferior calcanal spur, achillies tendiniosis of the right foot and a right ankle sprain. The questionnaire indicated that plaintiff's prognosis was guarded. Dr. Parks noted that plaintiff walked with an antalgic gait and was unstable on her feet and prone to falling down. Dr. Parks checked "yes" to indicate that plaintiff used a cane for ambulation support. However, Dr. Parks then indicated that the cane was not required for weight bearing. (Tr. 256).

On May 12, 2009, Louis B. Bonita, M.D., a state agency physician, completed a physical residual functional capacity assessment. (Tr. 313-319). Dr. Bonita assessed that plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk at least two hours per day, and sit up to six hours per day, push and pull with her right lower extremity on limited basis, occasionally use ramps, climb stairs and ladder, never climb ropes or scaffolds, frequently balance and stoop, and occasionally crouch, crawl, and kneel. (Tr. 314-315). Dr. Bonita found plaintiff's statements regarding symptoms and their effects on function only partially credible. Dr. Bonita explained that:

> The claimant has described daily activities that are not significantly limited in relation to her alleged symptoms. She participates in daily activities such as caring for personal needs and performing routine household activities. She also relates fairly well with others, can do light chores, shop in stores, prepare meals, etc.. The medical evidence shows that despite ongoing treatment, she continues to have pain which impacts on her ability to perform work related activities. She has pursued appropriate follow-up care for her impairments. She has aggressively pursued treatment for her R Plantar Fascial Tear. She received

7

treatment from a specialist for her impairments. Additionally, she did undergo
surgery for her impairment, which has resulted in some but not complete
improvement of her symptoms. While she has undergone physical therapy in the
past, she is not currently attending physical therapy. Moreover, she does not
require an assistive device to ambulate- uses a cane for "special situations". She
does not use a Tens unit. Also, she has been prescribed, and has taken,
appropriate medications for the alleged impairments. The medical records reveal
that the medications have been partially effective in controlling her symptoms.
She alleged no side effects from the use of medication. Furthermore, she has not
been prescribed narcotic medication for the pain.
(Tr. 318-319).

Janet Horowitz, Psy. D. completed a consultative examination report on June 25, 2009. (Tr. 320-326). Dr. Horowitz found that plaintiff had marked limitations in the ability to understand and remember short, simple instructions and make judgments on simple work-related decisions. Further, plaintiff had extreme limitations in the ability to carry out short, simple instructions, understand and remember detailed instructions, and carry out detailed instructions. Dr. Horowitz assessed that plaintiff had moderate limitations in the ability to interact appropriately with supervisors, and extreme limitations in the ability to interact appropriately with the public and coworkers, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. (Tr. 321).

Plaintiff received weekly mental health counseling from Linda Moreland, MSN, APRN, BC, between November 2008 and March 2009. (Tr. 305-312). Plaintiff complained of being depressed and anxious. Plaintiff's initial diagnosis was anxiety and it was noted that plaintiff had a score of $60^2$ on the Global Assessment of Functioning ("GAF")$^3$ scale. (Tr. 241). Plaintiff's diagnosis was changed to major depressive disorder-single episode and panic disorder

---

2**Error! Main Document Only.**A GAF score of 51-60 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks)OR moderate difficulty in social, occupational, or school functioning." <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV) at 32.

3 **Error! Main Document Only.**The Global Assessment of Functioning is a numeric scale (0 through 100) used by mental health clinicians and doctors to "measure the psychological, social, and occupational functioning levels of an individual." <u>Torres v. Barnhart</u>, 139 F. App'x 411, 415 n.2 (3d Cir. 2005)(citations omitted).

without agoraphobia in March 2009. (Tr. 310). Ms. Moreland found that plaintiff's impairments had a slight effect on her ability to understand, remember, and carry out short, simple instructions and detailed instructions because plaintiff sometimes has difficulty with concentration. Mr. Moreland further found that plaintiff's impairments had a slight effect on her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting because plaintiff is sometimes anxious or depressed and may be irritable. (Tr. 311).

On June 25, 2009, Francis Murphy, M.D., completed a psychiatric review technique and a mental residual functional capacity assessment. (Tr. 327-343). Dr. Murphy found plaintiff had mild limitations in restriction of activities of daily living and difficulties in maintaining social functioning, moderate limitations and difficulties maintaining concentration, persistence, or pace. (Tr. 337). Dr. Murphy further assessed that plaintiff is only limited in her ability to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to interact appropriately with the general public. (Tr. 341-342). Finally, Dr. Murphy determined that plaintiff is "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (Tr. 343).

Continuing with the five step analysis, the ALJ moved onto step three. At step three, the ALJ found plaintiff does not have an impairment, or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925 and 416.926). (Tr. 12).

At step four, the ALJ found that plaintiff has the residual functional capacity to perform less than the full range of light level exertional work. More specifically, plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; can stand and/or walk four

9

hours in an eight-hour day; can sit six hours in an eight-hour day; can do no more than occasional pushing or pulling with the right lower extremity; can occasionally climb ramps, stairs and ladders, but never climb ropes or scaffolds; can occasionally kneel, crouch and crawl; can frequently balance and stoop; has a need to alternate standing and sitting positions at will; and is limited to unskilled work with routine and repetitive tasks with only occasional judgment required on the job, no interaction with the public, and only occasional interaction with co-workers. (Tr. 14). The ALJ considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. (Tr. 14). Further, the ALJ considered opinion evidence. (Tr. 14).

The ALJ found that plaintiff's assertions were not fully credible concerning the severity of plaintiff's impairments and their impact on her ability to work. (Tr. 17).

Finally, at step five the ALJ found that plaintiff is unable to perform any past relevant work. (Tr. 18). However, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 19). Thus, the ALJ determined that plaintiff has not been under a "disability," as defined in the Social Security Act, from August 16, 2008, through the date of the ALJ's decision. (Tr. 20).

III.   PLAINTIFF'S CONTENTIONS

Plaintiff alleges: (1) the ALJ failed to consider plaintiff's need of an assistive walking device; and (2) the ALJ erred in finding plaintiff's subjective complaints not credible.

VI.   DISCUSSION OF MERITS

The Commissioner's findings must be affirmed if they are supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). The role of this court is to determine whether there is substantial evidence to

support the Commissioner's decision. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294 (1993). In coming to a decision, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. Richardson v. Perales, supra.

In the case at bar, the ALJ determined that medical evidence established that plaintiff's obesity disorder, status post distal tarsal tunnel release disorder, plantar fascial release disorder, right ankle sprain disorder, affective disorder, and anxiety disorder were severe impairments within the meaning of the Regulation. (Tr. 20). The ALJ further determined that plaintiff has the residual functional capacity to perform less than the full range of light level exertional work. More specifically, plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; can stand and/or walk four hours in an eight-hour day; can sit six hours in an eight-hour day; can do no more than occasional pushing or pulling with the right lower extremity; can occasionally climb ramps, stairs and ladders, but never climb ropes or scaffolds; can occasionally kneel, crouch and crawl; can frequently balance and stoop; has a need to alternate standing and sitting positions at will; and is limited to unskilled work with routine and repetitive tasks with only occasional judgment required on the job, no interaction with the public, and only occasional interaction with co-workers. (Tr. 14). The ALJ found that plaintiff is unable to perform any past relevant work. (Tr. 18). However, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 19).

After review of the records, this court finds the ALJ's decision was not supported by substantial evidence. As such, plaintiff's request for review should be GRANTED in part and DENIED in part.

11

A. The ALJ's Failure to Consider Plaintiff's Need of an Assistive Walking Device

Plaintiff claims that the ALJ failed to consider the evidence that plaintiff needs an assistive walking device. Plaintiff further claims that the ALJ failed to explicitly consider the credibility of plaintiff's assertion that she needs an assistive device for standing and walking and ignored or rejected the opinion of Dr. Parks that plaintiff needs an assistive walking device.

In making a residual functional capacity determination, the ALJ has the duty to evaluate all relevant evidence in the record. Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001); Burnett v. Cmmr., 220 F.3d 112,121(3d Cir. 2000); Cotter v. Harris, 642 F.2d 700, 704, 706 (3d Cir. 1981). The ALJ must explain the evidence supporting his findings and the reasons for discounting evidence he rejects so that the reviewing court can determine whether whether probative evidence was improperly rejected or simply ignored. Burnett, 220 F.3d at 121; Cotter, 642 F.2d at 705-06. The ALJ may not ignore medical evidence in favor of his own conclusions. Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir. 1983).

Further, with regard to medical evidence produced by a treating physician, the regulations advise that generally enhanced weight should be given to the findings and opinions of treating physicians. 20 C.F.R. § 404.1527(d)(2); Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988). These physicians' reports should be accorded great weight, especially when their opinions "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)(internal citations omitted). Controlling weight may be given to the opinion of a treating source; however, the ALJ is not bound by a physician's statement of disability and may reject it if: (1) there is a lack of data supporting it, Newhouse v.

Heckler, 753 F.2d 283, 286 (3d Cir. 1985) (finding ALJ justified in rejecting treating physician's unsupported medical conclusions); or (2) there is contrary medical evidence, Frankenfield, 861 F.2d at 408 (holding treating physician's opinion may be given no weight by ALJ if opinion is contrary to substantial medical evidence). The weight given to a physician's opinion depends upon the extent to which it is supported by clinically acceptable medical data and laboratory medical techniques. Coria, 750 F.2d at 247. Further, when evaluating a physician's opinion and the weight it is to be afforded, the ALJ must consider such factors as the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the evidence of record, and any specialization of the opining physician. 20 C.F.R. § 416.927(d)(2).

As plaintiff points out, the ALJ did note plaintiff's testimony that plaintiff has used a cane since 2009 and that she uses the cane daily. However, the ALJ did not discuss if the ALJ was accepting or rejecting that statement. The ALJ found the plaintiff's subjective complaints were not fully credible; however, the use of an assistive walking device is not a subjective complaint. If the ALJ rejected plaintiff's statement that she must use a cane to ambulate, the ALJ gave no reason for such a rejection.

Furthermore, as noted by the plaintiff, the ALJ never discussed the opinion of plaintiff's treating physician, Dr. Parks, that plaintiff needs a cane when she is on her feet because plaintiff is unstable on her feet and prone to falling down. (Tr. 255-56). The Commissioner argues that although, in a form questionnaire, Dr. Parks checked a box that suggests that plaintiff required a cane while on her feet, Dr. Parks in the same form declined to check a box as to whether plaintiff clinically required a cane for ambulation. The Commissioner also argues that Dr. Parks only provided three treatment notes to the ALJ and only one addressed plaintiff's ankle problems and that the record does not support plaintiff's need for a cane; thus,

13

the ALJ was not required to find plaintiff needed a cane for ambulation. While the Commissioner's assertions are accurate, the ALJ is still required to discuss all evidence of record and if rejecting evidence of a treating physician, the ALJ is required to provide substantial support for the decision to reject said evidence. The ALJ never discussed the form questionnaire completed by Dr. Parks, or Dr. Parks' notation that plaintiff needs a cane for ambulatory support.

The ALJ was required to discuss the evidence that relates to plaintiff's need of a cane. The ALJ failed to do so. Accordingly, we must remand this matter so that the ALJ can address the weight given to Dr. Parks' opinion and the evidence as it relates to plaintiff's need for an assistive walking device.

> B. The ALJ's Finding on Plaintiff's Credibility Regarding Plaintiff's Subjective Complaints

The ALJ found that plaintiff has underlying medically determinable impairments that could reasonably be expected to result in the symptoms as alleged; however, claimant's assertions were not fully credible concerning the severity of her impairments and their impact on her ability to work. Plaintiff claims that the ALJ did not adequately assess plaintiff's credibility on her claims of pain. Plaintiff argues that the objective evidence could reasonably cause the pain alleged by plaintiff.

In determining a plaintiff's residual functional capacity, the ALJ must consider whether there is an underlying impairment that could be expected to produce plaintiff's pain, and the extent to which plaintiff's symptoms limit plaintiff's ability to perform work. In assessing the severity of plaintiff's symptoms, the ALJ must consider plaintiff's subjective complaints of pain. Where objective medical evidence fails to substantiate plaintiff's claims of pain, the ALJ must assess plaintiff's credibility.

14

The difficulty in pain cases is the lack of requisite objective evidence to support a claimant's subjective complaints of disabling pain. Testimony of subjective pain to perform even light work is entitled to great weight when supported by competent medical evidence. Dobrowolsky v. Califano, 606 F. 2d 403, 409 (3d Cir. 1979). Where the testimony is reasonably supported by medical evidence, an ALJ may not discount such evidence without contrary medical evidence. Smith v. Califano, 637 F. 2d 968 (3d Cir. 1981). Even when not fully confirmed by objective medical evidence, subjective complaints must be seriously considered. Id. at 972; Green v. Schweiker, 749 F. 2d 1066, 1068 (3d Cir. 1984).

Plaintiff recites most of her testimony, in support of this claim. Plaintiff notes that she testified that she can only sit for one half hour, stand for twenty minutes, and walk less than two blocks at a time, and needs a cane to walk. Plaintiff explains that she testified that while she watches her grandchildren, she needs assistance from her sons, she does dishes and will sweep, but her grandchildren pick up the trash, she hasn't done laundry since 2009, and only food shops once a month. Plaintiff also notes that she testified that she has good days and bad and some days she cannot do anything and her pain is a nine out of ten, even with the use of her brace. Plaintiff also cites the majority of the medical records summarized above by the court. Plaintiff argues that the progress notes from Rothman Institute, the operative report from Thomas Jefferson University Hospital, and the physical therapy records all support plaintiff's subjective complaints of pain.

Although the ALJ is required to give great weight to a plaintiff's testimony of subjective complaints, the ALJ has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not found credible. Baerga v. Richardson, 500 F. 2d 309, 312 (3d Cir. 1974). When considering subjective complaints, the ALJ is entitled to

15

discredit a claimant's testimony, but must state the facts upon which the conclusion is based, which must be both clear and reasonable. Atkins v. Bowen, 690 F. Supp. 383, 389 (E.D. Pa. 1988). Relevant factors include claimant's statements, appearance, and demeanor; medical signs and laboratory findings; treatment and response; and physician's opinions regarding credibility and severity of claimant's subjective complaints. See Social Security Ruling ("SSR") 96-7p (1996). Deference must be given to the ALJ's determination in issues of credibility when reviewing the Commissioner's final decision, so long as the ALJ discusses the issue and his finding is supported by substantial evidence. Alvarez v. Sec. of Health and Human Services, 549 F. Supp. 897, 899-900 (E.D. Pa. 1982).

In determining plaintiff's residual functional capacity, the ALJ did not find plaintiff fully credible as to the severity of plaintiff's symptoms. The ALJ noted plaintiff's testimony, as to her limitations, from the hearing, but then explained that in a function report completed by plaintiff a month before the hearing plaintiff reported:

> That she takes care of her children and grandchildren, that she prepares "complete" meals daily, that she does "light" housecleaning, that she does laundry, that she goes grocery shopping, that she goes out three times daily, that she attends weekly religious services, that she walks, rides in a car, and uses public transportation to get around, and that she goes unaccompanied.
> (Tr. 16).

The ALJ further explained that:

> While the claimant testified that her daughter does the cooking, that she stopped doing the laundry in 2009, and that she stopped attending church services in 2009, the claimant also testified that she is independent in matters of self-care, that she gets the children up and ready for school, that she diapers, feeds and clothes her two month old grandchild, she can prepare simple meals, that she has teas parties and plays games [with] her grandchildren, that she washes dishes and sweeps, that she occasionally drives, that she goes shopping, that she socializes with a male friend, and that she watches television.
> (Tr. 16).

16

The ALJ found that "even granting that the claimant may perform some of these activities slowly, with some degree of difficulty, and/or with the assistance of other people, the level of activity as reported does not equate with the severity of physical or mental impairment as alleged." (Tr. 16)

The ALJ also noted that the primary care provider notes indicate that plaintiff lives with her boyfriend, children, and grandchildren, and that she reported attending school to be an administrative medical assistant after her alleged date of disability onset. It was further explained that the progress notes reveal that plaintiff's post-operative care has been routine, conservative and non-aggressive in nature. The ALJ also noted that while plaintiff testified that she stopped attending physical therapy because her doctor told her to, in fact she was discharged due to non-compliance and that although plaintiff testified that she in unable to get out of bed and that she has reported this to her doctors, there are no such complaints documented in the medical evidence. (Tr. 16).

Finally, the ALJ explained that:

> In summary, the record fails to provide objective medical evidence that the claimant's impairments are as severe as her hearing testimony suggests. While the claimant may experience episodic exacerbations of impairment symptomatology, the record fails to show the claimant requiring any post-operative critical active treatment or significant office care, other than for routine medical monitorization and maintenance. Medical sources have failed to document signs of substantial focal or neurological deficits, diminished ranges of motion, muscle atrophy or weakness, motor disruption, or sensory or reflex abnormalities, the medical record reveals no notable evidence of physical compromise which would adversely affect the claimant's ability to lift, carry, stand, walk, or sit to the degree as alleged, and the record reveals no notable evidence of underlying anatomical or physiological conditions that can reasonably be expected to produce the level of pain as described.
> (Tr. 17).

The ALJ noted inconsistencies in plaintiff's testimony and in the medical

17

records. The ALJ provided a lengthy explanation for finding plaintiff not fully credible. In sum, we find that the ALJ adequately explained her reasons for not finding plaintiff fully credible and that substantial evidence exists to support this determination.

Therefore, this court makes the following:

## RECOMMENDATION

AND NOW, this 9th day of May, 2013, it is RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be GRANTED in part and DENIED in part.

BY THE COURT:

/S LINDA K. CARACAPPA
LINDA K. CARACAPPA
UNITED STATES MAGISTRATE JUDGE